UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSE COLON,<br>        Plaintiff,<br><br>- against -<br><br>THE CITY OF NEW YORK, et al.,<br>        Defendants. | ORDER<br><br><br>09-CV-8 |
| MAXIMO COLON,<br>        Plaintiff,<br><br>- against -<br><br>THE CITY OF NEW YORK, et al.,<br>       Defendants. | <br><br><br>09-CV-9 |

**JACK B. WEINSTEIN, Senior United States District Judge:**

Defendant the City of New York (the "City") moves to dismiss plaintiffs Jose and Maximo Colon's claims as against it. Argument on the motion was heard on November 25, 2009.

Plaintiffs bring federal civil rights claims pursuant to 42 U.S.C. § 1983 and pendant state-law claims against the City, four named police officers, and ten unnamed police officers. Their Complaints are largely identical, and contain corresponding numbered paragraphs. *See* Complaint of Jose Colon, dated Jan. 2, 2009; Complaint of Maximo Colon, dated Jan. 3, 2009 (together, the "Complaints"). The Colons were arrested in a nightclub on January 5, 2008, and were arraigned on charges of selling narcotics to an undercover police officer. *See* Complaints



1

¶¶ 16-20, 28-29. The criminal charges against the Colons were dismissed by the Queens County District Attorney on June 26, 2008. *See* Complaints ¶ 33.

It is alleged that the arrests and criminal charges were based on false claims by undercover police officers that they were sold cocaine by the Colons. Complaints ¶¶ 34-36. The Colons claim to have been falsely arrested, imprisoned, subjected to an illegal strip search, and maliciously prosecuted. *See* Complaints ¶¶ 46, 49, 64-73.

The City is said to be liable under section 1983 for the Colons' injuries, pursuant to *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978), because the acts complained of were the result of the "customs, policies, usages, practices, procedures, and rules" of the City. Complaints ¶ 83. The following are alleged to be City customs or policies:

(a) wrongfully arresting minority individuals on the pretext that they were involved in drug transactions;

(b) manufacturing evidence against individuals allegedly involved in drug transactions;

(c) using excessive force on individuals who have already been handcuffed;

(d) unlawfully strip-searching pre-arraignment detainees in the absence of any reasonable suspicion that said individuals were concealing weapons or contraband; and

(e) arresting innocent persons in order to meet "productivity goals" (i.e. arrest quotas).

Complaints ¶ 84. The Colons assert that such customs and policies may be inferred from the existence of other similar civil rights actions that have been brought against the city, Complaints ¶ 85 (listing example cases), and from a January 2006 statement by Deputy Commissioner Paul J. Browne that police commanders are permitted to set "productivity goals," Complaints ¶ 86.

2

In support of its motion to dismiss, the City argues that the Colons fail to identify any actual custom or policy of the city, and that their allegations are too speculative and inconclusive to meet the pleading standard established in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Absent a viable federal claim against the City, the court is urged to decline supplemental jurisdiction over the Colons' state-law claims with respect to the City.

"[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556). Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration—through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

It would be desirable to quantify this general reputation, but such quantification is beyond the scope and capacity of the court on this motion. Upon inquiry at oral argument, neither party was able adequately to address what documentation may exist supporting or refuting the existence of such a policy or custom. *See* Nov. 25, 2009 Hr'g Tr. at 6:14–8:16, 9:21–11:6. Nevertheless, there are substantial issues: first, whether this reputation is predicated on a

significant number of misstatements by police officers—even though the overwhelming majority of the police force does not engage in such fabrications; and, second, whether failure to train, supervise, or discipline members of the police force that do commit such fabrications constitutes a policy or custom under *Monell*. *See, e.g., Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992). While the charge may prove to be completely unfair to the city and its generally outstanding police force, there are sufficient issues of fact to warrant further proceedings under *Monell*. Neither *Twombly* nor *Iqbal* can trump the Constitution.

Under these circumstances, the Colons have "nudged their claims across the line from conceivable to plausible," and state viable section 1983 claims against the City. *Twombly*, 550 U.S. at 570; *see also Iqbal*, 129 S. Ct. at 1952.

The City's motion is denied. Because the federal claims against the City survive, supplemental jurisdiction over the Colons' state-law claims against the City is appropriate. *See* 28 U.S.C. § 1367.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: November 25, 2009
Brooklyn, New York

4